## Williams Estate

*Walter Schachtel*, for accountant.

*Charles F. Nahill*, Special Assistant Attorney General, and *Albert Bartolomeo*, for Commonwealth.

SHOYER, J., March 23, 1967.—Decedent, Joseph L. Williams, also known as Joseph Leroy Williams and Joseph L. Williams, M. D., died July 1, 1965, survived by his spouse, Carrie W. Williams, and leaving a will and codicil, a copy of each of which is hereto annexed, whereby he gave his entire estate to his widow, Carrie, absolutely, with alternative disposition in the event she should predecease him, not necessary to recite, since she is living.

Letters testamentary were granted by the register of wills on July 15, 1965, to Carrie W. Williams, accountant, and proof of publication of the grant of same is hereto annexed.

Payment of Pennsylvania estate tax on June 8, 1966, in the sum of $66.42, was duly vouched.

Charles F. Nahill, Esq., Special Assistant Attorney General, and Albert Bartolomeo, Esq., appeared for the Commonwealth of Pennsylvania claiming transfer inheritance tax, and the awards will be made subject thereto.

The statement of proposed distribution and notice of the audit recite that the only questions requiring adjudication arise from the "failure of the Pennsylvania Revenue Dept. to allow as deductions from gross estate for determination of Pennsylvania Inheritance Tax":

"1. The sum of $3,746.49 as the balance due as of the date of death to General Motors Acceptance Corp. under a purchase contract for a 196 [5] Cadillac.

"2. The sum of $9,777.44 for counsel fees actually expended and required for legal services rendered in the administration of this estate, including Federal Estate Tax Return and disputed audit, and Inheritance Tax Returns for Massachusetts and Virginia".

Section 1001(2) of the Pennsylvania Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, 72 PS §2485-1001(2), authorizes the personal representa-

tive, after due notice, to have the correctness of the disallowance of deductions determined at the audit of his account.

Counsel for the Commonwealth offered its inheritance tax appraisement in evidence and rested.

A written stipulation of facts, entered into between counsel for accountant and the Commonwealth, relating to decedent's debt to General Motors Acceptance Corporation (GMAC), was submitted. The facts are not in dispute. The stipulation recites that on March 13, 1965, decedent entered into a written "conditional sale contract" with Scott-Smith Cadillac Co. (Scott-Smith) to purchase a 1965 Cadillac for $6,286.35; Scott-Smith accepted decedent's 1962 auto at a value of $2,821.35 as a down payment. The contract (stipulation, exhibit A) also authorized Scott-Smith to apply for coverage under a group life insurance policy from the Prudential Insurance Company of America (Prudential) on decedent's life in an amount of the reducing balances owing on the purchase price, payable on death to GMAC, vendor's assignee. The $43.62 premium cost under the Prudential policy was charged to decedent on his sales contract. Decedent agreed to pay Scott-Smith the $3,465 balance of the purchase price, together with $578.46 finance charges and $43.62 premium, a total of $4,087.08, in 36 equal monthly installments of $113.53 each. Scott-Smith immediately assigned the sales contract to GMAC. Decedent made three consecutive monthly payments of $113.53 each, in accordance with his contract, so that at the time of his death there remained a balance owing of $3,746.49. Prudential originally denied any liability to GMAC on the ground that the insured in his application for insurance misrepresented his health as good when he knew as a fact that this was untrue. Both Scott-Smith and GMAC demanded payment of the $3,746.49 from decedent's personal representative

(exhibit D of stipulation). However, after further investigation, Prudential paid GMAC the sum of $3,-746.49 in full discharge of decedent's debt. The stipulation further recites that decedent's 1965 Cadillac sedan was inventoried in decedent's estate and included as an asset in the inheritance tax report filed by decedent's personal representative at its fair market value of $4,850. The sum of $3,746.49 claimed by GMAC was included as a debt, but disallowed by the Commonwealth as a deduction.

The copy of the Prudential group creditor's insurance policy no. GL-360 issued to GMAC insuring the lives of "certain debtors", as well as the sample certificate issued on the life of each debtor, were submitted and are hereto attached. The certificate recites, inter alia: "This Certificate is issued on the basis of debtor's statement of good health, to induce Prudential to effect the insurance, made in a written instrument signed by him in connection with the obligation". The "written instrument", so called, is the conditional sale contract, copy of which is attached to the stipulation as exhibit "A".

The reverse side of exhibit "A", under the heading "Provisions", reserves "title" in Scott-Smith and its assignee, so that GMAC retained a lien for the balance of the purchase price against the Cadillac which decedent purchased. Express statutory authority for the seller to hold the indicia of title, even though the conditional buyer is recognized as the "owner", is granted by The Vehicle Code. See definition of "owner", section 102 of the Act of April 29, 1959, P. L. 58, as amended, 75 PS §102, and section 201, "Certificate of Title", 75 PS §§201 et seq. It should be noted that under paragraph 11(c) (1), the right to apply the insurance to payment of the buyer's obligation is expressly reserved to the seller.

The issue, as stated by the Commonwealth, is

whether the disallowed item constitutes a "debt" of decedent under sections 631 to 640 of the Act of 1961. Counsel for the Commonwealth contend that in order to qualify as a debt, payment of the obligation must come from an "*asset* of the decedent", even though it is not part of his taxable estate. While conceding that this group life insurance is expressly exempt from tax under section 303, there is a significant failure by counsel for the Commonwealth to explain why it is not, nevertheless, an asset of decedent's gross estate.

I am informed that this is a case of first impression.

Article VI of the Inheritance and Estate Tax Act of 1961 is headed "Deductions" with six subchapters. Three of these subdivisions, denominated "A. In General", "B. Expenses—Deductible", and "D. Liabilities —Deductible", are pertinent to our problem. We shall first take note of: "Section 631. Liabilities of the Decedent; In General.—All liabilities of the decedent shall be deductible, subject to the limitations hereinafter set forth"; and then "Section 632. Debts Based Upon Contract or Agreement; In General.—Except as otherwise provided in sections 638 and 639 [here not relevant since 638 involves pledge to an exempt transferee and 639 involves liability for a tort or as an accommodation party], the deductions hereinafter set forth for indebtedness of the decedent, when founded upon a promise or agreement, shall be limited to the extent that it was contracted bona fide and for an adequate and full consideration in money or money's worth".

It cannot be successfully contended that Scott-Smith and GMAC's *claim* against decedent's estate for the unpaid balance of $3,746.49, at the time of decedent's death and at the time when Prudential denied its liability on the group policy, was not such a *liability* of decedent's estate as to qualify as a deduction under section 631, or that it was not "contracted bona fide

and for an adequate and full consideration in money or money's worth", as required by section 632.

Section 633 of the taxing statute provides:

"Secured Loan.—Except as provided by section 664 [pertaining to foreign property], indebtedness owing by the decedent upon a secured loan shall be deductible whether or not the security is a part of the gross taxable estate".

The lien which the vendor retained on the automobile for the balance of the unpaid purchase price was the primary security for the debt. In the event of nonpayment of an instalment, the vendor had the right to repossess the vehicle. The group life insurance policy was additional collateral for the debt, limited by its terms to the balance owing on the debt at the time of death of the insured.

As recited in the stipulation, the automobile was inventoried in decedent's estate at its full market value of $4,850, even though the seller retained its lien for the balance of the unpaid purchase price. The life insurance proceeds payable to creditor-beneficiary were not included as an asset. This was proper, because section 303 provides that "all proceeds of insurance on the life of the decedent, unless payable to the estate of the decedent, are exempt from inheritance tax". Furthermore, there is authority for exempting the proceeds of *group* insurance, even when payable to the estate, because of the broad provisions of the group insurance exemption of April 26, 1929, P. L. 784, sec. 1, 40 PS §534: Jackman's Estate, 51 D. & C. 69 (1943).

Group life insurance is not new in Pennsylvania, but creditor insurance for groups of borrowers from a single company or institution was not authorized until Act of May 16, 1939, P. L. 144. Currently, creditor, or credit, life insurance must conform to the requirements of the Act of May 11, 1949, P. L. 1210, sec.

1(2) and sec. 3, 40 PS §532.1(2) and §532.3, and amendments. 1 Appleman, Ins. L. & P., §20 (pocket part), states that this is "one of the more recent varieties of life insurance".

Our courts have recognized the fundamental differences existing between individual and group life insurance as given expression by the various acts of the legislature: see Layman v. Continental Assurance Company, 416 Pa. 155 (1964). Significantly, " 'the real insured is not the employee [or debtor] but the entity or group of employees [or debtors], and the employee [debtor] is in the nature of a beneficiary entitled to receive certain privileges or benefits by reason of that insurance. Therefore, the employer [creditor], as representative of that entity, is the real agent of the insured' ": Layman, supra, at page 160. While the policy terms in credit life insurance revolve around the existence of the debt, and the named insured must be responsible for the debt, "the purpose of the insurance is to insure the life of [the] debtor": 1 Appleman, ibid. §20, and see Pioneer Homeowners Life Ins. Co. v. Hogan, 110 Ga. App. 887, 888, 140 S. E. 2d 212 (1965).

The comment to section 633 of the Inheritance and Estate Tax Act, quoted supra, states: "This is in conformity with the existing law: Goldstein Est., 384 Pa. 1; Schwartz Est., 369 Pa. 574; Wilson Est., 363 Pa. 546; Biron Est., 4 D. & C. 2d 729, 6 Fiduc. Rep. 46. . . . Policy loans from an insurance company will not be deductible. As with all the deductions arising from decedent's indebtedness, the general provision of Sec. 632 is applicable".

Grossman and Smith, in their comprehensive and authoritative treatise entitled "Pennsylvania Inheritance and Estate Tax", comment extensively on section 633 and review the cases construing the prior law. They point out (pages 329-32) the distinction between a policy loan made by the *insurer* to the *in-*

*sured,* which does *not* create the relationship of *debtor-creditor:* Schwartz Estate, 369 Pa. 574 (1952), and Wilson Estate, 363 Pa. 546 (1950), and other cases cited, involving a bank loan as to which insurance on decedent's life was pledged by him as collateral for the loan, and the amount of the loan was later allowed or disallowed as a debt depending on the intent of the insured decedent: See also Miller Estate, 402 Pa. 140; Cribbs Estate, 411 Pa. 242; Green Estate, 415 Pa. 161; Caimotto Estate, 15 Fiduc. Rep. 7.

Counsel for accountant contends that section 633 furnishes additional support for her claimed deduction. We have serious doubts that "secured loan", as here used, should be extended to include indebtedness arising from a conditional or instalment sale, even though title be expressly reserved in the seller as in this case. "Loan" and "indebtedness" are not exact synonyms. While every "loan" creates a debt, the term "indebtedness" is broader and embraces liabilities which may or may not have their origin in loans. While the two forms of indebtedness created by loan and conditional sale have much in common, there is a substantial body of law, both statute and case law, pointing up significant differences. In addition, the comment to section 633 cites cases dealing exclusively with cash loans from banks or insurance companies, and it was this type of problem which gave birth to section 633, according to Grossman & Smith, op. cit., page 329. The insurance in the cited cases had been issued on the life of the individual in a form which set up cash reserves, and is distinguishable from group insurance, which is issued on a term basis. In such cases, the insurance contract pre-exists the negotiations for the loan and the policy is amended to protect the lender as assignee, the named beneficiary to receive the balance, if any. In the instant group situation, the creditor is both the beneficiary and the agent of the in-

sured. He is the agent of the insured, not to negotiate a *loan*—for the sale will be completed, if necessary, with only the automobile as collateral—but to negotiate the insurance on the debtor's life with the insurer. See Layman v. Continental Assurance Company, supra, page 160; McFadden v. Equitable Life Assurance Society of the United States, 351 Pa. 570, 575 (1945).

Be that as it may, insofar as section 633 is applicable, the clearly expressed public policy would seem to allow as a deduction decedent's *indebtedness*, irrespective of whether the security is a part of the taxable estate or was given to protect a *loan*.

That economic detriment—which may be defined as actual payment by the estate—is not a necessary prerequisite to the allowance of certain deductions, is clearly indicated in the several sections of article VI of the statute dealing with "Deductions". Where the legislature intended payment to be a condition for the allowance of the deduction, it so indicated by the terms used in the pertinent sections. By contrast, we note that in subchapter "F" of article VI there are listed those claims and expenses which are "Not Deductible". None of the sections thereunder would relate to the present claim.

Subchapter "A" of article VI, entitled "In General", provides in section 601:

"The only deductions from the value of the property transferred shall be those set forth in this Article. Except as otherwise expressly provided in this act, they shall be deductible regardless of whether or not *assets* comprising the *decedent's taxable estate* are employed in the payment or discharge of the deductible items, Provided, That when a tax is imposed upon a transfer described in sections 221-241, such deductions shall be allowed to the transferee only to the extent that the transferee has actually paid the deductible items and

either (1) the transferee was legally obligated to pay the deductible items, or (2) the estate subject to administration by a personal representative is insufficient to pay the deductible items". (Italics supplied.)

The comment to this section by the Joint State Government Commission states:

"The second sentence changes existing law: See Christensen Est., 11 D. & C. 2d 485, 7 Fiduc. Rep. 240; and cases discussed therein, including especially Kritz Est., 387 Pa. 223".

It would appear under this section that the *debt* in the instant matter, payment of which was made by the group life insurance policy, which policy was not includible as an asset because of the broad life insurance exemption provided in section 303 of the statute, is nonetheless deductible for tax purposes. The limitations imposed by the bracketed part have no application, because sections 221 to 241 relate solely to inter vivos transfers, and we are concerned with a transfer by death.

Sections 631, 632 and 633 have been quoted in full above. Section 631, as pointed out, provides that "All liabilities of the decedent shall be deductible, *subject to the limitations hereinafter set forth*". (Italics supplied). What are those limitations? The limitations in sections 632 and 633 were discussed above. Those limitations do not require that the debt be actually paid by the personal representative. The attorneys for the Commonwealth have not directed our attention to any sections of the act which: (1) require payment from decedent's taxable assets, and (2) are applicable to the instant situation. Our careful and independent examination of the other sections of the act has disclosed no such limitations.

In view of the foregoing, decedent's admitted obligation to GMAC in the sum of $3,746.49 is allowed as a deduction for inheritance tax purposes under sections

601, 631 and 632 of the act, even though the security, the creditor's group life insurance policy, was not includible as a taxable asset.

The other issue raised by the Commonwealth involves accountant's credit for attorney's fee of $9,777.-44. By stipulation, it is agreed that the gross property includible for Federal estate tax purposes was over $220,000. Attorney's fee was claimed in the amount of $9,500 and allowed in the amount of $4,500. The taxable Pennsylvania estate amounted to $25,923.69, as shown by the account, but $8,374.65 of this sum was advanced by the sole beneficiary "to meet deficit". The Department of Revenue has disallowed the amount claimed for counsel fee over and above the sum of $1,000. The testamentary assets in Pennsylvania did not include real estate owned by the entireties in the Commonwealth of Massachusetts, on which inheritance tax was paid by accountant. Decedent was also the owner of a parcel of improved real estate in Portsmouth, Va. This property required services disproportionate to the actual value of the real estate in order to perfect title and satisfy the tax requirements of Virginia. Counsel in Philadelphia obtained a copy of the tax laws of Virginia and prepared the required inheritance tax return for that State. He also arranged for probate of the will in Virginia, as well as in Philadelphia, and arranged to pay the State tax, the City of Portsmouth tax and the required clerk's fees in order to transfer title to devisee. All of these services were essential to the orderly administration of the estate and were accomplished without incurring additional expense for local counsel.

In addition to successfully pursuing the claim for payment of the group creditor insurance on the Cadillac automobile, counsel was instrumental in obtaining payment of a policy on decedent's life for $50,000 issued by the Metropolitan Life Insurance Company.

Because of the very short interval of time which elapsed between the purchase of this insurance and the onset of decedent's death from cancer, Metropolitan initially was prone to deny liability. Counsel asserts that he devoted a total of 95 hours in handling this estate and that, having specialized in this field for many years, the rate of compensation of $75 an hour is reasonable.

The Commonwealth, in allowing but $1,000, limited the basis for determination of counsel fee as deductible expense to the Pennsylvania probate assets alone.

Section 611, which is our guide, reads as follows:

"*Administration Expenses.* — All reasonable expenses of administration of the decedent's estate and of the assets includible in the decedent's taxable estate shall be deductible". This is broader than section 2 of the tax law of June 6, 1919, P. L. 521, which read: ". . . the only deductions to be allowed from the gross values of such estate . . . shall be . . . the expenses of the administration of such estates. . . ."

Our Supreme Court construed the 1919 statute in Kritz Estate, 387 Pa. 223 (1956), and allowed the deduction of one half the mortgage debt on entireties real estate to reduce the tax on jointly held property, there being no assets left by decedent which were subject to administration. The proviso in section 601, supra, has clearly modified the holding in Kritz by disallowing the *debt* except to the extent that transferee (there a sister) has paid it. However, allowance of the administration expenses involved in preparing and filing the tax return, etc., as distinguished from the debt itself, is just as certainly preserved by the legislature in section 611 of the 1961 act. Frequently, in both identity and size, there exists a marked variance between "decedent's estate" and "taxable estate". The inclusion by the legislature of both of these terms in the one sentence furnishes an obvious and meaning-

ful contrast. Divergent construction of the two terms must surely ensue whenever the factual situation so dictates. Implicit in the court's holding in Kritz is the allowance of non-probate expenses along with the debt. The legislature, while imposing limitations on the debt as stated above, has been explicit and unequivocal in allowing the continued deduction of expenses reasonably incurred in the administration of non-probate property.

It was further stipulated by the parties herein that the amount of attorney fee claimed in the Federal estate tax return was reduced after audit to $4,500, because the district director of internal revenue determined that the charge for services over and above that amount should be billed to widow-devisee as an individual.

This determination and resultant limitation by the district director is in accord with the comment to section 611 that "whether an expense is properly one of administration rather than one chargeable to the distributee of income producing property will be a question to be determined under the facts of the specific situation involved". The efforts by counsel to secure payment of the Metropolitan insurance were in behalf of widow-beneficiary, whereas payment of the Prudential Insurance benefited the estate. The Metropolitan policy proceeds, once having been recovered, however, presumably would be subject to Federal estate tax, and the time, effort and responsibility of preparing the tax forms and calculating the tax would fall upon counsel. Especially would that be true here, where no commission was taken by executrix.

Counsel has expressed his willingness to accept the same figure for Pennsylvania inheritance tax as the district director adopted, viz., $4,500. The Commonwealth has not disputed the fairness of this figure, once the base is broadened to include non-probate property.

Since the 1961 act authorizes such broadened base, I will allow this amount and sustain the taxpayer's protest to the extent of an estate attorney's fee of $4,500.

Since the Commonwealth alone objected, the credit in the account will stand as against the sole beneficiary. . . .

And now, March 23, 1967, the account is confirmed nisi.